UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM J. BRENNAN, | : |
| Plaintiff, | Civil Action No. 01-3837 (JAG) |
| v. | **SUPPLEMENTAL OPINION** |
| EUGENE KULICK, et al., | |
| Defendants. | : |

### GREENAWAY, JR., U.S.D.J.

This matter comes before the Court on the Motion for Summary Judgment, pursuant to FED. R. CIV. P. 56, of Defendants Eugene Kulick, Janice Sandri, Rick Ricciardelli, Terry Ryan, Christopher Parany, William Wilk, James Segreto (collectively the "Individual Defendants") and the Township of Little Falls ("Little Falls") (collectively "Defendants"). For the reasons set forth below, Defendants' motion will be denied, in part.

### I. INTRODUCTION

Plaintiff filed the instant action on August 13, 2001, alleging that Defendants violated his rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution, in contravention of 42 U.S.C. §§ 1983 and 1985. Plaintiff also alleged that Defendants conspired to obstruct justice. Finally, Plaintiff stated claims for intentional and negligent infliction of emotional distress, and retaliation under the Conscientious Employee Protection Act, N.J. STAT. ANN. § 34:19-2.

1

Defendants filed a motion for summary judgment on December 30, 2005, arguing, *inter alia*, that the Individual Defendants are entitled to qualified immunity from Plaintiff's § 1983 claims. This Court granted Defendants' motion on July 24, 2006. However, due to a clerical error, this Court failed to rule on the Individual Defendants' defense relating to qualified immunity. A court may, at any time, and on its "own initiative or on the motion of any party," correct such oversight. FED. R. CIV. P. 60(a). The following opinion makes such correction.[1]

## II. **INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY**

Plaintiff argues that Defendants retaliated against him for Plaintiff's exercise of rights pursuant to the First Amendment of the United States Constitution. (Compl. ¶ 36.) Specifically, Plaintiff claims that he "engaged in speech on matters of public concern through personal appearance before the Township Committee, open letters to the editor, door to door petition drives, and interviews with the press." (Id. at ¶ 22.) Plaintiff alleges that such speech[2]

---

[1] This opinion is intended to be a supplement to this Court's July 24, 2006 Opinion. (See July 24, 2006 Op. Grant'g Defs.' Mot. for Summ. J.) As such, this Court will not repeat the standard of review relating to motions for summary judgment, or the holdings specified in that opinion.

[2] Plaintiff alleges that his speech included "allegations that the Township Committee maintained conflicts of interest, unlawfully laid off police officers, allowed unsafe and overweight trash collection vehicles by the DPW, accepted unlawful gratuities in exchange for favorable treatment, routinely violated the open public meetings act, retaliated against and harassed a Township employee after said employee sought public office, used township employees on public time to further [R]epublican campaign activity, electioneered within Township polling places, squandered opportunities to preserve open space because of personal real estate interests, issued bonds for plumbing work on a residential property in order that the Mayor could sell said property through his real estate agency, gerrymandered [] a polling place to discourage [D]emocratic voters, hired and promoted employees through nepotism, [] proceed[ed] to construct a new municipal complex without the approval of the county planning board, adopted plans and specifications for construction of a new municipal building without public input and retained an attorney that held conflicting interests with other clients." (Compl. ¶ 23.)

2

precipitated Defendants' retaliatory acts.[3] (See id. at ¶¶ 26-28, 32-34, 36; see also Pl.'s Br. in Opp. to Defs.' Mot. for Summ. J. at 15-18.) In response, the Individual Defendants argue that, because any alleged action of "an individual committeeperson was due to the performance of discretionary functions incidental to the position," they are entitled to qualified immunity, and should, therefore, be granted summary judgment. (Defs.' Br. in Supp. of Mot. for Summ. J. at 8 (citing Wilson v. Layne, 526 U.S. 603, 609 (1999))).

"In order for a court to address the qualified immunity question, it must first determine that the plaintiff has alleged a violation of a constitutional right." McCullough v. City of Atlantic City, 137 F. Supp. 2d 557, 572 (D.N.J. 2001) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). In other words, the threshold question is, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the offic[ial's] conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 200 (2001) (citing Siegert, 500 U.S. at 232). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to

---

[3] Plaintiff alleges that Defendants retaliated against him by: "(i) threatening to sue him for his criticism of the Township Attorney, (ii) publishing false and defamatory statements to the community via The Little Falls Gazette and via open public meetings over which they preside, (iii) conspiring to deprive him of his membership in the Great Notch Fire Company, (iv) conspiring to compel plaintiff's submission to an invasive physical examination, (v) suspending plaintiff without just cause, (vi) refusing to provide plaintiff with due process via the requisite complaint or hearing, (vii) threatening, harassing and retaliating against Township employees known to associate with plaintiff, (viii) ordering Township employees to remove plaintiff's political signs from private property, (ix) ordering Township employees to remove plaintiff's political signs from utility poles without authority to do so, [and] (x) refusing to provide plaintiff with the requisite 30 days notice to remove his political signs from a public right of way in accordance with the New Jersey Roadsign Control and Outdoor Advertising Act . . . . " (Compl. ¶ 36.)

ask whether the right was clearly established. This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition . . . " Id. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

"The finding that the right at issue is clearly established, or even that the public official clearly violated that established right, does not end the Court's inquiry. Even where a Constitutional right has been violated, a[n official] will be entitled to qualified immunity where he or she reasonably believed that his or her conduct was lawful. Only if the facts material to the issue of whether the public official['s] acts were objectively reasonable will there be an issue for the jury." McCullough, 137 F. Supp. 2d at 572.

As applied to this case, this Court must first determine whether Plaintiff "has alleged a violation of a constitutional right." McCullough, 137 F. Supp. 2d at 572. "In order to plead a retaliation claim under the *First Amendment*, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d Cir. 2006) (emphasis in original). Plaintiff has satisfied this requirement. Plaintiff alleges that he engaged in speech, protected by the First Amendment, involving matters of public concern, (Compl. ¶¶ 22-23.); that Defendants completed several retaliatory actions, (Id. at ¶ 36.); and, implicitly, that the retaliatory actions were in response to Plaintiff's protected speech, (see id. at ¶¶ 26-28, 32-34, 36; see also Pl.'s Br. in Opp. to Defs.' Mot. for Summ. J. at 15-18). Because Plaintiff sufficiently alleged a

4

violation of a constitutional right, "the crucial inquiries are (1) whether the right to be free from official retaliation for free speech is well-established, and if so (2) whether the specific conduct at issue here should have been known to violate that right, if it occurred." Downey v. Coal. Against Rape and Abuse, Inc., 143 F. Supp. 2d 423, 449 (D.N.J. 2001) (citing Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)).

"As to the first question, [the District of New Jersey has found] that there is a well-established right of a citizen to be free from retaliation for exercising one's right to free speech." Id. In Downey, the court extended the "well-established principle that a government may not fire or otherwise retaliate against one of its employees for exercising her *First Amendment* rights," to non-employee, private citizens. Id. at 450 (stating that although cases in which a non-employee, private citizen alleges retaliation, under the First Amendment, "are different from cases involving allegations of retaliatory discharge of a government employee[,] the same principles apply.") (emphasis in original). In fact, the court stated that "[a] non-employee private citizen's right to be free from sanction for exercising her right to expression may be even greater than that of a state employee." Id.

The Downey reasoning, and facts, are particularly illustrative here. There, the plaintiff alleged that the defendants "publicly and personally criticized [her] at meetings, and 'caused local newspapers to publish and/or embellish on their criticisms of her', for the purpose of disparaging plaintiff, destroying her professional reputation, interfering with her employment . . . and depriving her of her rights of free speech . . . . " Id. at 433. Plaintiff in the present action makes similar allegations. (Compl. ¶ 36) (alleging, *inter alia*, that Defendants "publish[ed] false and defamatory statements to the community via The Little Falls Gazette and via open public

5

meetings over which they preside, . . . [and] conspir[ed] to deprive [Plaintiff] of his" position as a volunteer firefighter with the Great Notch Fire Company). Based on the foregoing, this Court agrees with the rationale of the Downey court, and holds "that there is a well-established right of private citizens to be free from official retaliation for exercise of free speech." Id.

Finally, this Court must determine whether Defendants reasonably believed their actions to be lawful. McCullough, 137 F. Supp. 2d at 572; Downey, 143 F. Supp. 2d at 450; Saucier, 533 U.S. at 202. Defendants argue that the Individual Defendants "perform[ed] [] discretionary functions incidental to the position," (Defs.' Br. in Supp. of Mot. for Summ. J. at 9), and that such functions were all constitutional (Id. at 17.) Defendants focus on Plaintiff's challenge to the institution of a "three-minute rule at public meetings, which limited public input to three-minutes per citizen, and [] holding the public input portion of the public meetings during the beginning of the meeting rather than at the end." (Id. at 12.) Defendants do not address, specifically, each of Plaintiff's alleged acts of retaliation as stated in the Complaint. (Compl. ¶ 36.) Yet, implicit in Defendant's brief is that all actions taken by the Individual Defendants, not limited to the institution of the three-minute rule or the time of the public input portion of public meetings, were reasonable.

Plaintiff, on the other hand, disputes the Defendants' claim of reasonableness. Plaintiff alleges a conspiracy in the implementation of the three-minute rule and timing of the public input portion of public meetings, (Pl.'s Br. in Opp. to Defs.' Mot. for Summ. J. at 16), as well as in the attempt to require Plaintiff to participate in additional physical examinations for his position as a volunteer firefighter (Id. at 17.) In support of Plaintiff's position, Plaintiff submits Marie Ruffolo White's Declaration, which states that the Individual Defendants made decisions regarding the

timing of the public input portion of public meetings, and the three-minute rule, as a result of Plaintiff's presence at such meetings. (Decl. of Marie Ruffolo White ¶¶ 16, 18, 19-22.) Further, Plaintiff alleges several more acts of retaliation by the Individual Defendants, (Compl. ¶ 36) (alleging, *inter alia*, threats to sue, false and defamatory publications in the local newspaper, harassment of Plaintiff's associates, and removal of Plaintiff's political signs), not directly addressed by Defendants. "In light of the disputed issues of fact . . . , there remains a genuine issue of material fact as to whether [Defendants'] actions were objectively reasonable. Th[is] Court will therefore deny Defendants' motion [for summary judgment] . . . based on qualified immunity." McCullough, 137 F. Supp. 2d at 572.

### III. CONCLUSION

For the foregoing reasons, Individual Defendants' motion for summary judgment, based on the defense of qualified immunity, is denied.

_____
JOSEPH A. GREENAWAY, JR., U.S.D.J.